## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARLENE RODRIGUEZ GARZA, | |
| Plaintiff, | CIVIL ACTION NO. 1:23-CV-00698 |
| v. | (MEHALCHICK, J.) |
| WELLSPAN PHILHAVEN, | |
| Defendant. | |

### MEMORANDUM

Presently before the Court is a motion to dismiss brought by Defendant WellSpan Philhaven ("Defendant"). (Doc. 21). On April 27, 2023, Plaintiff Arlene Rodriguez Garza ("Plaintiff") initiated this action by filing a complaint ("Complaint"), asserting claims of disability, religious, and pregnancy-based discrimination and retaliation under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pregnancy Discrimination Act of 1978 ("PDA"). (Doc. 1). Plaintiff filed the operative amended complaint ("Amended Complaint") on July 1, 2023. (Doc. 17). For the following reasons, Defendant's motion to dismiss shall be **GRANTED**. (Doc. 21).

### I.   BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the Amended Complaint. (Doc. 17). Plaintiff worked as a medical assistant for Defendant from June 2015 to March 7, 2022, when her employment was terminated. (Doc. 17, ¶ 6). In or about September 2021 and October 2021, Plaintiff alleges that she spoke with two supervisors about her religious beliefs and shared that she would seek religious exemption from any vaccine mandate Defendant enforced. (Doc. 17, ¶¶ 8, 10). One of Plaintiff's supervisors, who is also Christian, allegedly told Plaintiff that

she believed Defendant was not granting Christian religious exemptions, among others, and discouraged Plaintiff from requesting a religious exemption. (Doc. 17, ¶ 11). Plaintiff learned from other colleagues that Defendant was granting religious exemptions to members of other faiths. (Doc. 17, ¶ 12).

On October 20, 2021, Plaintiff tested positive for Covid-19 and was on medical leave for three weeks. (Doc. 17, ¶ 13). The next day, on October 21, 2021, Defendant notified all employees that they needed to be vaccinated against Covid-19 by December 6, 2021, or request a religious or medical exemption. (Doc. 17, ¶ 14). On November 10, 2021, Plaintiff returned to work. (Doc. 17, ¶ 16). Upon return, one of Plaintiff's supervisors, Ms. Jones, asked Plaintiff when she would get the Covid-19 vaccine. (Doc. 17, ¶ 16). Plaintiff responded that she was still experiencing lingering symptoms and did not feel comfortable getting vaccinated yet. (Doc. 17, ¶ 16). Ms. Jones allegedly told Plaintiff to look into getting a medical exemption. (Doc. 17, ¶ 16). At the same time, Plaintiff alleges that she told Ms. Jones that another supervisor had told Plaintiff that Ms. Jones stated that Defendant was not granting religious exemptions, and Ms. Jones denied any knowledge of that conversation. (Doc. 17, ¶ 17).

Plaintiff then alleges that on November 23, 2021, Ms. Jones sent an email to other staff members which stated that Plaintiff decided she did not want to get vaccinated and that Ms. Jones advised her about deadlines to file for exemptions. (Doc. 17, ¶ 21). On November 30, 2021, Plaintiff's physician denied Plaintiff's medical exemption request based on lingering Covid-19 symptoms and anxiety. (Doc. 17, ¶ 22). Plaintiff alleges that Defendant discouraged physicians from providing exemptions. (Doc. 17, ¶ 22). On December 2, 2021, Defendant paused its vaccine mandate. (Doc. 17, ¶ 23). On December 7, 2021, Plaintiff reiterated her

interest in a medical or religious exemption to Ms. Jones and sent a draft religious exemption written request to Ms. Jones. (Doc. 17, ¶ 24). The religious exemption request stated, in relevant part, "I believe that my body is the temple of the Holy Spirit, and for that reason, it is my responsibility to take care of my body. There are no longitudinal studies for the Covid-19 vaccines inhibiting my ability to make truly informed decision." (Doc. 17, ¶ 25). Plaintiff's request further stated, "As a Christian, I abstain myself from consuming any chemicals or substance that have not been naturally created by God. This goes with medication as well unless there has been longitudinal studies showing long term effects." (Doc. 17, ¶ 28). On or around December 8, 2021, Plaintiff discovered she was pregnant. (Doc. 17, ¶ 34). The next day Defendant again informed employees that exemptions were no longer available. (Doc. 17, ¶ 35). On December 10, 2021, Plaintiff informed Ms. Jones that she had a high-risk pregnancy and stated that she wanted to request a medical exemption. (Doc. 17, ¶ 37). Plaintiff alleges that she received "inconsistent messages" from Defendant and Ms. Jones about the availability of exemptions and accommodations. (Doc. 17, ¶¶ 23, 33, 36-53). Plaintiff also alleges that she told Ms. Jones on two occasions that she had drafted a religious exemption request but did not send it because she thought exemptions were no longer being accepted. (Doc. 17, ¶¶ 40, 46).

On February 24, 2022, Plaintiff responded to an email from Ms. Jones touching base about the vaccine mandate and asking if Plaintiff planned to resign for noncompliance. (Doc. 17, ¶ 56). Plaintiff responded that she did not plan to resign and that she was disappointed by Defendant's decision to terminate her employment due to the vaccine mandate. (Doc. 17, ¶ 57). Plaintiff wrote, "As a pregnant woman, who is considered to have a high risk pregnancy due to bleeding, I was placed in an uncomfortable position to decide whether I wanted to take

a vaccine with no longitudinal studies for me and my baby's health outcome. As a mother, I am not ready to take the risk of causing any harm to my baby, to get vaccinated with a vaccine that is not even preventing infection nor reducing the risk of hospitalization in my age group." (Doc. 17, ¶ 57). On March 1, 2022, Plaintiff was placed on leave. (Doc. 17, ¶ 58). Plaintiff responded that she had raised health, pregnancy and religious concerns with Defendant, which Defendant did not accommodate. (Doc. 17, ¶ 58). Plaintiff's employment was terminated on March 7, 2022. (Doc. 17, ¶ 61).

On April 27, 2023, Plaintiff filed her Complaint, asserting claims of disability, religious, and pregnancy discrimination. On July 1, 2023, Plaintiff filed the operative Amended Complaint. (Doc. 17). On July 25, 2023, Defendant filed its motion to dismiss and brief in support. (Doc. 21; Doc. 22). On August 5, 2023, Plaintiff filed her brief in opposition to Defendant's motion to dismiss. (Doc. 23). On August 16, 2023, Defendant filed its reply brief. (Doc. 24). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition. (Doc. 17; Doc. 21; Doc. 22; Doc. 23; Doc. 24).

## II.   LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well

as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for

which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.  DISCUSSION

Defendant avers that Plaintiff has failed to state a claim for relief pursuant to the ADA, Title VII, or the PDA because Plaintiff has not alleged facts sufficient to infer that she had an ADA-eligible disability, that she objected to Defendant's vaccine mandate due to a religious belief, or that she was discriminated or retaliated against on the basis of her religion, disability, or pregnancy. (Doc. 22, at 25-62). Plaintiff responds that she has pled that she was disabled, religiously opposed to the vaccine, and was terminated unlawfully due to her disability, religious beliefs, and pregnancy. (Doc. 23, at 6-16).

### A.    DISABILITY DISCRIMINATION CLAIMS

In her First and Second Claims for Relief, Plaintiff alleges two disability discrimination claims under the ADA, failing to provide a reasonable accommodation and hostile work environment. (Doc. 17, ¶¶ 84-102). Defendant argues that Plaintiff's ADA discrimination claims fail as a matter of law because Plaintiff has not alleged that she is disabled under the ADA. (Doc. 22, at 41). Plaintiff responds that by alleging that she had "Long Covid symptoms," a high-risk pregnancy, and anxiety, she has sufficiently averred that she is disabled. (Doc. 23, at 12).

In order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996) ). Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306-07 (3d Cir. 1999). The ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

Here, Plaintiff alleges broadly that she is a qualified individual with a disability "due to her high-risk pregnancy and anxiety[.]" (Doc. 17, ¶ 85). In her brief in opposition, she adds that her Long Covid symptoms also constitute a disability under the ADA. (Doc. 23, at 12). First, allegations that her pregnancy was high-risk due to bleeding risks do not provide enough detail for a finding of an ADA-eligible disability. *Matthews v. New Light, Inc.*, No. CV 22-427, 2022 WL 11966542, at *3 (W.D. Pa. Oct. 20, 2022) ("although complications and impairments caused by pregnancy *may* constitute a disability under the ADA, pregnancy alone is *not* a disability within the meaning of the ADA.") (citing *Seiple v. Two Farms LLC*, No. 20-5650, 2021 WL 601171, at *4 (E.D. Pa. Feb. 16, 2021)). Plaintiff's allegations of a high-risk pregnancy do not specify the individualized experiences of Plaintiff, which is required to determine if she can state a claim under the ADA. *Oliver v. Scranton Materials, Inc.*, No. 3:14-CV-00549, 2015 WL 1003981, at *8 (M.D. Pa. Mar. 5, 2015) ("the [c]omplaint does

not specify what 'complications' and 'surgery' [p]laintiff actually experienced, but only recites, in talismanic fashion, that some complications and surgery occurred. [. . . .] When [p]laintiff does not provide the [c]ourt with any indication of what occurred to support her disability allegations, the [c]ourt cannot engage in the necessary 'individualized assessment' to determine whether she can state a claim under the ADA."); *see also* 29 CFR § 1630.2(j)(1)(iv). Similarly, Plaintiff has not provided any allegations that her pregnancy, anxiety, or lingering Covid-19 symptoms limited her in "performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). While Plaintiff need not go into particulars about the nature of her substantial limitations, she must at least allege that these limitations exist. *See Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021) (dismissing an ADA claim because plaintiff did not adequately plead facts regarding "impairments as a result of his COVID-19 diagnosis, and [did] not allege[] what 'major life activity' or activities he was unable to perform as a result."); *Cf. Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 40 (3d Cir. 2018) (finding a plaintiff had an ADA disability because she not only pled that she had severe anxiety but "further alleged that those impairments limited certain life activities such as sleeping, eating, and engaging in social interaction."); *Burbach v. Arconic Corp.*, 561 F. Supp. 3d 508, 519 (W.D. Pa. 2021) (finding that plaintiff stated an ADA claim "by alleging he had trouble breathing," as a result of an impairment). Without alleging facts that her anxiety, lingering Covid-19 symptoms, or pregnancy caused any impairments or limitations in her life activities, Plaintiff has not sufficiently alleged facts to plausibly state an ADA claim. As such, Defendant's motion to dismiss Plaintiff's First and Second Claims for Relief shall be **GRANTED**.

B.    TITLE VII RELIGIOUS DISCRIMINATION CLAIMS

In her Fourth and Fifth Claims for Relief, Plaintiff alleges that Defendant violated Title VII by discriminating against her on the basis of her religion, under theories of failure to accommodate and disparate treatment. (Doc. 17, ¶¶ 102-130). This Court will address both theories in turn.

1.    **Failure to Accommodate**

Defendant submits that Plaintiff has failed to state a Title VII claim for failure to accommodate because (1) Plaintiff never submitted her religious exemption form, (2) Plaintiff's objections to the Covid-19 vaccine mandate were not religious in nature such that Defendant was required to accommodate them, and (3) granting Plaintiff's religious exemption would have imposed an undue hardship on Defendant. (Doc. 22, at 29-32). Plaintiff responds that (1) Plaintiff's verbal requests for exemption are sufficient under law, (2) Plaintiff's beliefs as written in her unsubmitted form demonstrate sincerely held religious beliefs, and (3) exemption would not impose an undue hardship on Defendant. (Doc. 23, at 6-10). "To establish a *prima facie* case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee 'held a sincere religious belief that conflicted with a job requirement,' (2) the employee 'informed their employer of the conflict,' and (3) the employee was 'disciplined for failing to comply with the conflicting requirement.'" *Harvey v. Bayhealth Med. Ctr., Inc.*, No. CV 23-92-RGA, 2024 WL 456498, at *2 (D. Del. Feb. 5, 2024) (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)).

A court must first determine whether a plaintiff's asserted belief is "sincerely held" and religious within a plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339

(1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)). The Third Circuit has noted that a plaintiff cannot use the notion that "all of life's activities can be cloaked with religious significance" to plead that an otherwise secular belief was religious in nature. *Africa v. Com. of Pa.*, 662 F.2d 1025, 1035 (3d Cir. 1981). This is rooted in the Supreme Court's directive that an individual cannot utilize "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)). The Third Circuit has elaborated that an "otherwise secular belief" is one that is otherwise "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490. To determine what is religious in nature as opposed to "essentially political, sociological, or philosophical," courts consider the following:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

> *Fallon*, 877 F.3d 487, 491 (quoting *Africa*, 662 F.2d at 1032)).

Here, Plaintiff told supervisors beginning in September 2021 that she did not wish to get vaccinated, wanted to seek a religious exemption, and spoke with Ms. Jones and other supervisors about her desire for a religious exemption on several occasions. (Doc. 17, ¶¶ 8, 10). Beyond verbal requests, Plaintiff further provided Ms. Jones drafts of her religious exemption request form (Doc. 17, ¶¶ 24-28). Through her verbal notices and draft exemption requests, Plaintiff "informed" Defendant of the vaccine mandate's conflict with her beliefs. *Fallon*, 877 F.3d at 490.

Determining whether Plaintiff's belief was religious and sincere presents a more sensitive and delicate issue. *See Harvey*, 2024 WL 456498, at *2; *Africa*, 662 F.2d at 1031. By

asking supervisors about the availability of religious exemptions and expressing a desire to request one, Plaintiff's verbal conversations with supervisors do not reach the level of specificity necessary to determine whether her objection to the vaccine is religious or an otherwise secular belief "cloaked" in religious significance. (Doc. 17, ¶¶ 8, 10, 24-28); *see Africa*, 662 F.2d at 1035. As for her drafted religious exemption request and emails to Defendant, Plaintiff has stated, "I believe that my body is the temple of the Holy Spirit, and for that reason, it is my responsibility to take care of my body. There are no longitudinal studies for the Covid-19 vaccines inhibiting my ability to make truly informed decision." (Doc. 17, ¶ 25). Plaintiff additionally wrote, "As a Christian, I abstain myself from consuming any chemicals or substance that have not been naturally created by God. This goes with medication as well unless there has been longitudinal studies showing long term effects." (Doc. 17, ¶ 28). Belief about a vaccine's effectiveness or safety is a medical belief, not a religious one. *See Fallon*, 877 F.3d at 492 (holding that when "the basis of [a vaccine] refusal" is a "concern that it may do more harm than good" and based in "worries about the health effects of the [] vaccine, disbelie[f about] the scientifically accepted view that it is harmless to most people, and wish[es] to avoid this vaccine" that is a medical belief, not a religious one); *Harvey*, 2024 WL 456498, at *4 (dismissing a Title VII based on failure to accommodate a religious Covid-19 vaccine refusal when a plaintiff pled "'I believe in God. I believe the Holy Spirit lives in me,'" that "'God would [not] want me to receive this vaccine'" and that "she honors God by being the one to 'choose' or 'decide' what is allowed to enter her body."); *see also Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023) ("Ulrich's attempt to avoid testing which she argues 'could bring potential harm, introduce harmful substances, cause adverse health effects or endanger [her] wellbeing,' and

her argument that COVID testing would cause her 'anxiety,' clearly state medical concerns which she attempts to 'cloak with religious significance[.]'"); *Isaacs v. Bayhealth Med. Ctr., Inc.*, No. CV 22-1468-RGA, 2024 WL 359244, at *4 (D. Del. Jan. 31, 2024) (dismissing Title VII religious discrimination claim because "[p]laintiff fails to adequately link his objection to the COVID-19 vaccines to his 'Body is a Temple' belief').

The fact that Plaintiff's objections to the Covid-19 vaccine are based in its effectiveness and a lack of longitudinal studies, as well as the fact that she consistently attempted to request medical exemptions at the same time and with the same basis as her religious exemption requests suggest that Plaintiff's beliefs are "political, sociological, or philosophical," rather than religious. (Doc. 17, ¶¶ 24-28); *Fallon*, 877 F.3d at 490 (quoting *Seeger*, 380 U.S. at 165); see *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) ("the additional information provided in Plaintiff's November 15, 2021 e-mail challenges Defendant's ***factual*** and ***scientific*** basis for imposing the testing requirement, which suggests the basis for Plaintiff's belief is 'political, sociological, or philosophical' – and not religious.") (citing *Fallon*, 877 F.3d at 490); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465-6 (M.D. Pa. 2022), *appeal dismissed*, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023) (dismissing Title VII religious discrimination claims because a plaintiff's "belief that Covid-19 vaccines and tests are harmful and unnecessary—fails to establish sincere religious opposition" and her statements "only reinforce[] that her opposition stems from her medical beliefs."). Plaintiff's objections to the vaccine refer to her anxiety about the health effects of the vaccine, and allowing Plaintiff to cloak such fears in religious significance would give Plaintiff "a blanket privilege 'to make [her] own standards on matters of conduct in which society as a whole has important interests.'" (Doc. 17, ¶¶ 24-28); *Africa*,

662 F.2d at 1031 (quoting *Wisconsin*, 406 U.S. at 215-16). Because Plaintiff has failed to aver that she held sincere religious beliefs, this Court will not opine on the parties' undue hardship arguments.

Accordingly, because Plaintiff has not pled facts sufficient to show that her objections to Defendant's vaccine mandate were based in sincere religious beliefs, Defendant's motion to dismiss Plaintiff's Fourth Claim for Relief is **GRANTED**.

### 2.     Disparate Treatment

Defendant avers that Plaintiff has failed to state a Title VII claim for religious discrimination under a theory of disparate treatment because she has failed to allege that similarly situated individuals were treated differently than her. (Doc. 22, at 38-41). Plaintiff does not respond to this argument directly but instead states that she believed she was being treated differently and that were it not for her religion, she would not have been terminated. (Doc. 23, at 11).

To establish disparate treatment discrimination based on religion by a current employer, a plaintiff must make out a *prima facie* case of discrimination; i.e., she must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) her employer subjected her to an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *See McNamara v. Susquehanna Cty.*, Civil Action No. 3:17-cv-02182, 2018 WL 2183266, at *3– 4 (M.D. Pa. May 11, 2018); *see also Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 213 (E.D. Pa. 2010). Once a plaintiff makes out a *prima facie* case of employment discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *Bowersox v. Pa. Dep't of Corr.*, Civil

No. 4:180-cv-000384, 2021 WL 674225, at *7–8, (M.D. Pa. Feb. 22, 2021). To constitute an adverse employment action, the action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001). In this case, Plaintiff's termination qualifies as an adverse action, which Defendant does not dispute. (Doc. 22, at 53). *See Carroll v. Acme Truck Line, Inc.*, 992 F. Supp. 2d 512, 529-30 (W.D. Pa. 2014).

Plaintiff has failed to show that her objection to the vaccine mandate was based in a religious belief. Therefore, she has also failed to support a disparate treatment claim. *See Ritter v. Lehigh Valley Health Network*, No. CV 22-4897, 2024 WL 643543, at *6 (E.D. Pa. Feb. 15, 2024) ("Because … [p]laintiff has failed to plead a sincerely held religious belief, there is no evidence to support a disparate treatment claim.")(citation omitted); *Leeck v. Lehigh Valley Health Network*, No. 5:22-CV-4634, 2023 WL 4147223, at *3 n.2 (E.D. Pa. June 23, 2023) (plaintiff failed to state a disparate impact claim because she "fails to plead that her adverse action was due to a sincerely held religious belief"); *See Blackwell*, 2023 WL 362392, at *9 n.8 ("Because [p]laintiff's [c]omplaint fails to plead that her suspension and termination was due to a sincerely held ***religious*** belief, [p]laintiff's [c]omplaint fails to plead a cause of action for religious discrimination under [any] Title VII [theory of liability]") (citing *Wallace v. City of Phila.*, No. 06-4236, 2010 WL 1730850 at *6 (E.D. Pa. Apr. 26, 2010)).

Further, Plaintiff does not allege facts sufficient to suggest that other, similarly situated individuals were treated more favorably than her due to her religious beliefs. Plaintiff specifically mentions the treatment of other employees only twice. (Doc. 17, ¶¶ 11-12). First, Plaintiff alleges that a supervisor told her "that she had conducted some research at the hospital and found that Christian religious exemptions, among others, were not being

granted." (Doc. 17, ¶ 11). Defendants correctly argue that this does not allege that similarly situated individuals were treated differently, but the opposite – that exemptions were denied to employees of other faiths as well. (Doc. 22, at 41). Plaintiff's allegation that she discovered that some individuals were granted exemptions does not salvage her claim. (Doc. 17, ¶ 12). Plaintiff's averment that employees of unidentified religious faiths received an accommodation when Plaintiff did not, does not support a plausible claim for relief. *See, e.g., Mullen v. AstraZeneca Pharms., LP*, No. CV 23-3903, 2023 WL 8651411, at *4 (E.D. Pa. Dec. 14, 2023) (dismissing a Title VII disparate treatment claim when "[p]laintiff does not identify any difference in treatment between him and his former colleagues other than that some employees of various unidentified faiths received a religious accommodation while his request for a religious accommodation – which, as noted previously, was inadequate [because it was not religious in nature] – was denied."); *cf. Ritter*, 2024 WL 643543, at *6 (dismissing Title VII disparate treatment claim because plaintiff's complaint did not specifically reference other employees' treatment); *Wilhoit v. AstraZeneca Pharms. LP*, No. CV 22-1634-GBW-SRF, 2024 WL 2843169, at *2 (D. Del. June 5, 2024) (noting that plaintiffs did not plead disparate treatment without "facts showing that [d]efendant treated unvaccinated employees with natural immunity and claiming a religious exemption, like [p]laintiffs, less favorably than non-religious employees with natural immunity who also failed to comply with the [c]ompany's vaccine mandate.").

Accordingly, Defendant's motion to dismiss Plaintiff's Fifth Claim for Relief is **GRANTED**.

## C.   Retaliation Claims

Defendant submits that Plaintiff's Third and Sixth Claims for Relief – retaliation claims under both the ADA and Title VII – fail. Defendant initially submits that Plaintiff has not pled that Plaintiff's protest of Defendant's vaccination policy was the "but-for" cause of her termination. Plaintiff correctly responds that at the motion to dismiss stage, "'[P]laintiff need only proffer evidence sufficient to raise the inference that her engagement in a protected activity was the likely reason for the adverse employment action, not the but-for reason.'" (Doc. 23, at 14) (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d at 249, 253 (3d Cir. 2017). Plaintiff contends that she has met either burden by alleging that "she engaged in protected activity and was rebuffed at every turn" before being terminated. (Doc. 23, at 14). Defendant responds in its reply brief that Plaintiff has still not alleged facts to meet the lower standard because she has not raised the inference that her protest of Defendant's vaccination policy likely caused Defendant to terminate her employment. (Doc. 24, at 33).

Retaliation claims under the ADA are analyzed under the same standard as a Title VII retaliation claim. *See Sterling v. McKesson Automation, Inc.*, No. 02:04cv1470, 2006 WL 2792203, at *9 (W.D. Pa. Sept. 26, 2006). Therefore, this Court will consider both retaliation claims together. To establish a *prima facie* retaliation claim under the ADA or Title VII, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted); *see also Allen v. Lackawanna Cnty.*, No. 3:18-CV-00209, 2020 WL 13190244, at *6 (M.D. Pa. July 28, 2020) ("When analyzing an ADA retaliation claim, courts use the same framework as that employed for retaliation claims arising under Title VII.") (citing *Krouse*, 126 F.3d at 500), *report and*

16

*recommendation adopted sub nom. Allen v. Lackawanna Cnty. Bd. of Commissioners*, No. 3:18-CV-209, 2022 WL 1110323 (M.D. Pa. Apr. 13, 2022). "[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a reasonable, good faith belief that [she] was entitled to request the reasonable accommodation [she] requested." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (internal citation omitted). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima*, 602 F.3d at 188. A plaintiff claiming retaliation must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Rail. Co. v. White*, 548 U.S. 53, 54 (2006)).

Here, Plaintiff has sufficiently pled an adverse employment action by alleging that Defendant first suspended her and then terminated her employment on March 7, 2022, and Defendant does not dispute this allegation. (Doc. 17, ¶ 61; Doc. 22, at 53; Doc. 23, at 14); *see Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994 (E.D. Pa. July 26, 2023) (termination is an adverse employment action); *see also Ruggiero*, 736 F. App'x at 41. Plaintiff properly alleged she protested the vaccine requirement by alleging that "she sought a religious accommodation from the Policy that would otherwise require her to violate her sincere religious beliefs[. . . . and] continued to oppose Defendant's unlawful practice through her formal termination." (Doc. 17, ¶ 134). After she was suspended, but prior to her termination, she authored a letter which stated, "this decision [to require the vaccine or terminate me] is unjust, I was not given any realistic options[.]" (Doc. 17-2, at 24). Her

letter refers to both her Christian identity and high-risk pregnancy as reasons for protesting the policy. (Doc. 17-2, at 24). Plaintiff's references to her Christian faith and pregnancy, as well as her "unjust" experience with the religious and medical exemption policies, sufficiently show a "good faith belief that [she] was entitled to request the reasonable accommodation [he] requested." *Sulima*, 602 F.3d at 188; *see also Divine Equal. Righteous*, 2023 WL 4763994, at *10 (allowing a plaintiff to advance that they engaged in a protected activity by "submitting the letter to HR [] following [d]efendant's decision to require the [p]laintiffs to obtain the vaccine or otherwise be deemed to have voluntarily resigned" and "filing a charge of discrimination with the EEOC."); *Al Refat v. Franklin Fin. Servs. Corp.*, No. 1:19-CV-1507, 2021 WL 2588789, at *6 n.6 (M.D. Pa. June 24, 2021) ("merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).

As to whether Plaintiff has sufficiently pled that her protest of Defendant's vaccination policy was the likely cause of her termination, Plaintiff alleges "Defendant terminated Plaintiff in close temporal proximity to her requesting religious accommodation and/or seeking continued accommodations," and based on this allegation, avers that she sufficiently alleged facts that her engagement in protected activity was the likely reason for her termination. (Doc. 17, ¶ 141; Doc. 23, at 14). However, even when construing these facts in the light most favorable to Plaintiff, this Court requires more to properly infer a causal connection between protected activity and an adverse employment action in retaliation for such activity. Plaintiff has not alleged any facts suggesting that her termination was the result of retaliation for her letter rather than the enforcement of Defendant's vaccine policy. *See*

*Divine Equal. Righteous*, 2023 WL 4763994, at *10 ("the sum of [p]laintiffs' allegations tends to support that the claimed adverse actions were not done in retaliation for any protected activity but were instead merely actions taken consistent with [d]efendant's stated vaccination policy[. . . . and p]laintiffs' termination [. . . .] were the consequences of [p]laintiffs' initial and continued failure to follow the vaccination policy, and there are no non-conclusory allegations supporting that either was done in retaliation for any protected activity."); *Worthy v. Unilever United States, Inc.*, No. 2:23-CV-17570 (BRM) (JSA), 2024 WL 3326039, at *11 (D. N.J. July 8, 2024) ("[p]laintiff alleges [. . . ] that '[d]efendant's decision to terminate [p]laintiff's employment was motivated, in whole or in part, by [p]laintiff's protected activity; specifically, his complaint to HR.' Absent more, these allegations are insufficient to assert a claim for unlawful retaliation.") (internal citations omitted); *Bushra v. Main Line Health, Inc.*, No. CV 23-1031, 2024 WL 1219962 (E.D. Pa. Mar. 21, 2024) (finding that plaintiff did not state a retaliation claim when she sent an email protesting vaccine policy after adverse employment action).

Accordingly, Plaintiff has failed to state a claim for retaliation under the ADA or Title VII. Defendants motion to dismiss Plaintiff's Third and Sixth Claims for Relief shall be **GRANTED**.

D.    PREGNANCY DISCRIMINATION CLAIM

Defendant submits that Plaintiff has not stated a claim under the PDA for disparate treatment because she has not alleged that similarly situated non-pregnant employees were treated differently or more favorably than she was. (Doc. 22, at 57). Plaintiff does not clearly respond to this argument. Instead, Plaintiff repeats the test for pregnancy discrimination and

states that she raised her concerns about vaccination and her pregnancy repeatedly with Defendant. (Doc. 23, at 15).

Title VII, as amended by the PDA, prohibits "discriminat[ion] against any individual with respect to ... [his or her] compensation, terms, conditions, or privileges of employment, because of the individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress enacted the PDA to amend Title VII's definition section, clarifying:

> The terms "because of sex" or "on the basis of sex" include ... because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.

> 42 U.S.C. § 2000e(k).

The prohibition is breached "whenever an employee's pregnancy [or related medical condition] is a motivating factor for the employer's adverse employment decision." *In re: Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997). The PDA does not, however, require preferential treatment for pregnant employees. Instead, it mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work. *In re: Carnegie Ctr. Assoc.*, 129 F.3d at 297; *see also Tysinger v. Police Dept. City of Zanesville*, 463 F.3d 569, 575 (6th Cir. 2006).

To reiterate, to establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). A plaintiff alleging employment discrimination, however,

is "not required to plead facts to establish a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lucchesi v. Day & Zimmerman Grp.*, No. 10-4164, 2011 WL 1540385, at *4 (E.D. Pa. Apr. 21, 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

For pregnancy discrimination, the Third Circuit has modified the first element of a *prima facie* case to "adduce evidence that she was pregnant, and, that the employer knew it." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted). The second and third elements are self-explanatory, and "[t]he fourth element requires that a plaintiff show some nexus between her pregnancy and the adverse employment action." *Doe*, 527 F.3d at 365. There are "several ways" to establish nexus – and while any one alone may be sufficiently suggestive of a causal link, causation can also be established holistically "based upon review of all proffered evidence." *Ahern v. EResearch Tech., Inc.*, 183 F.Supp.3d 663, 669 (E.D. Pa. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 (3d Cir. 2007) ("[I]t matters not ... whether each piece of evidence ... is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively."). The "broad array of evidence [upon which] a plaintiff may rely" to establish a causal nexus includes, *inter alia*, "disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class," *Doe*, 527 F.3d at 366, "temporal proximity between the pregnancy and the adverse act[,]" *Ahern*, 183 F. Supp. 3d at 669 (citation omitted), a "pattern of antagonism," or facts that show an employer gave "inconsistent explanations" for the adverse action. *Farrell*, 206 F.3d at 280, 287 (internal quotation marks and citation omitted).

21

"[T]here is no bright line rule as to what constitutes un[usually] suggestive temporal proximity...." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). However, the Third Circuit "ha[s] held that a temporal proximity greater than ten days" is not, by itself, unusually suggestive. *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) (citing *Farrell*, 206 F.3d at 280). Where "there is no unusually suggestive temporal proximity, courts look to 'the intervening period for ... circumstantial evidence ... that give[s] rise to an inference of causation when considered as a whole.' " *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F.Supp.3d 546, 557 (E.D. Pa. 2017) (alterations in original) (quoting *Marra*, 497 F.3d at 302); *see also Smith v. RB Distribution, Inc.*, Civ. A. No. 20-900, 2020 WL 6321579, at *10 (E.D. Pa. Oct. 28, 2020) (noting that, where the plaintiff cannot produce evidence of "an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity, ... the evidence may, when taken as a whole, suffice to raise the inference.").

Here, Plaintiff was terminated based upon the timeline set out in Defendant's vaccine mandate policy. (Doc. 17, ¶¶ 58, 61, 127; Doc. 22, at 53-54). First, she was suspended on March 1, 2022, then she was terminated one week later, on March 7, 2022, when she failed to receive the Covid-19 vaccination during her suspension. (Doc. 17, ¶¶ 58, 61). She alleges that she "was subjected to said employment conditions based solely on her pregnancy and was subjected to said conditions when those in non-protected categories were treated differently and favorably in their employment." (Doc. 17, ¶ 154). However, Plaintiff makes no allegations that would allow this Court to infer that her pregnancy, rather than her refusal to get vaccinated without a proper exemption, was the reason for her termination. She was not terminated after becoming pregnant or after she told supervisors she was pregnant. (Doc. 17, ¶¶ 37-40, 58, 61). Additionally, as Defendant aptly notes, "she does not allege that non-

pregnant employees were allowed to keep working despite not complying with the vaccination policy." (Doc. 24, at 35). Further, Defendant was not inconsistent in its explanation of Plaintiff's termination. Quite the contrary, Plaintiff acknowledges that Defendant consistently checked in with Plaintiff regarding her vaccination status and the consequences of noncompliance with the vaccine mandate. (Doc. 17, ¶¶ 16-17, 21-22, 38-39, 43-49, 56). Accordingly, the circumstances do not "suffice to raise the inference" that Plaintiff was treated differently due to her pregnancy. *See Smith*, 2020 WL 6321579, at *10. Defendant's motion to dismiss Plaintiff's Seventh Claim for Relief is **GRANTED**.

E.      LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Plaintiff has failed to allege facts that her pregnancy, lingering Covid-19 symptoms, or anxiety could give rise to an ADA-eligible disability or that there was any nexus between her pregnancy and her termination. However, with more specific allegations regarding those medical concerns, she could plausibly state an ADA claim or discrimination claim. Therefore, Plaintiff will be granted leave to amend her disability and pregnancy discrimination claims, as well as her retaliation claims. *See Oliver*, 2015 WL 1003981, at *8 (granting leave to amend retaliation and disability claims related to pregnancy). Plaintiff will not be granted leave to amend her religious discrimination claims because curing the fundamental deficiency in those

23

claims would be futile. *See Fallon*, 877 F.3d at 495 ("Fallon has not proposed any amendments that would cure the fundamental deficiency in his claims—that his anti-vaccination beliefs are not religious in nature."); *Ritter*, 2024 WL 643543, at *7 ("Given that the [c]ourt has found that [p]laintiff's request did not adequately state a religious objection to [d]efendant's vaccination policy, amendment to the [c]omplaint would be futile").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motions to dismiss is **GRANTED**. Plaintiff's Fourth and Fifth Claims for Relief are **DISMISSED with prejudice**. Plaintiff's First, Second, and Third, Sixth, and Seventh Claims for Relief in her Amended Complaint are **DISMISSED without prejudice**. Plaintiff will be granted leave to amend her complaint in accordance with this Memorandum.

An appropriate Order follows.

BY THE COURT:


Dated: August 22, 2024                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**