## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ARLENE RODRIGUEZ GARZA,

               Plaintiff,

     v.

WELLSPAN PHILHAVEN,

               Defendant.

CIVIL ACTION NO. 1:23-CV-00698

(MEHALCHICK, J.)

### MEMORANDUM

Presently before the Court is a motion to dismiss brought by Defendant Wellspan Philhaven ("Wellspan"). (Doc. 31). On April 27, 2023, Plaintiff Arlene Rodriguez Garza ("Rodriguez") initiated this action by filing a complaint asserting claims of disability, religious, and pregnancy-based discrimination and retaliation under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Pregnancy Discrimination Act of 1978 ("PDA"). (Doc. 1). Rodriguez filed the operative second amended complaint on August 29, 2024. (Doc. 29). For the following reasons, Wellspan's motion to dismiss shall be **GRANTED**. (Doc. 31).

### I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the second amended complaint. (Doc. 29). Rodriguez worked as a medical assistant for Wellspan from June 2015 to March 7, 2022, when her employment was terminated. (Doc. 29, ¶ 6). Around September 2021, Wellspan employees began speculating that Wellspan would begin to enforce a COVID-19 vaccination mandate for its employees. (Doc. 29, ¶ 7). In or about September 2021 and October 2021, Rodriguez alleges that she spoke with two supervisors about her religious beliefs and shared

that she would seek religious exemption from the potential mandate. (Doc. 29, ¶ 8). Ms. Marcis Perez Zapata ("Zapata"), one of Rodriguez's supervisors, who is also Christian, told Rodriguez that she had done "some research at the hospital and found that Christian religious exemptions, among others, were not being granted. In fact, Ms. Zapata herself was terminated after she sought accommodation for the vaccine due to pregnancy, among other reasons." (Doc. 29, ¶ 9). Mandy Jones ("Jones"), another one of Rodriguez's supervisors, was present for the conversation. (Doc. 29, ¶ 16). Rodriguez learned from other colleagues that Wellspan was granting religious exemptions to members of other faiths. (Doc. 29, ¶ 10). Amidst the confusion among Wellspan staff about vaccine mandate enforcement, "Wellspan sent out internal memos to its physicians asking them to encourage vaccines and implying that they should avoid providing exemptions for patient employees." (Doc. 29, ¶ 7).

On October 20, 2021, Rodriguez tested positive for COVID-19 and was on medical leave for three weeks. (Doc. 29, ¶ 11). The next day, on October 21, 2021, Wellspan announced a COVID-19 vaccine mandate and notified all employees that they needed to be vaccinated against COVID-19 by December 6, 2021, or request a religious or medical exemption. (Doc. 29, ¶ 12). On November 9, Rodriguez received an email from Jones which discussed guidance for employees who had tested positive for the virus and encouraged her to contact her doctor about the vaccine. (Doc. 29, ¶ 13). On November 10, 2021, Rodriguez returned to work. (Doc. 29, ¶ 14). Upon return, Jones asked Rodriguez when she would get the COVID-19 vaccine. (Doc. 29, ¶ 14). Rodriguez responded that she was still experiencing lingering symptoms and did not feel comfortable getting vaccinated yet. (Doc. 29, ¶¶ 14-15). Jones allegedly told Rodriguez to look into getting a medical exemption to the vaccine mandate. (Doc. 29, ¶ 15). Rodriguez told Jones that Zapata informed her Wellspan would

not be granting religious exemptions. (Doc. 29, ¶ 16). Jones denied any knowledge of that conversation despite being present for Rodriguez's conversation with Zapata. (Doc. 29, ¶ 16).

On November 23, 2021, Jones sent an email to other staff members which stated that Rodriguez decided she did not want to get vaccinated, that Jones advised Rodriguez that the deadlines to file for exemptions to the mandate has passed, that Jones had been clear with Rodriguez about the deadline while Rodriguez was out of office, and finally, that Jones told Rodriguez that she had to be vaccinated or be terminated. (Doc. 29, ¶ 19). On November 30, 2021, Rodriguez met with her physician, a physician affiliated with Wellspan Health Network, who denied Rodriguez's medical exemption request based on Rodriguez's lingering COVID-19 symptoms and anxiety. (Doc. 29, ¶ 20). Rodriguez alleges that her physician denied her request because Wellspan discouraged its physicians from providing exemptions to the mandate. (Doc. 29, ¶ 20).

On December 2, 2021, Wellspan paused the mandate. (Doc. 29, ¶ 21). On December 7, 2021, Rodriguez reiterated her interest in a medical or religious exemption to Jones and drafted a religious exemption request that she ultimately did not send. (Doc. 29, ¶¶ 22, 27). The draft religious exemption request stated, in relevant part, "I believe that my body is the temple of the Holy Spirit, and for that reason, it is my responsibility to take care of my body. There are no longitudinal studies for the COVID-19 vaccines inhibiting my ability to make truly informed decision." (Doc. 29, ¶ 23). Rodriguez's request further stated, "[a]s a Christian, I abstain myself from consuming any chemicals or substance that have not been naturally created by God. This goes with medication as well unless there has been longitudinal studies showing long term effects." (Doc. 29, ¶ 25). Rodriguez also noted that her beliefs had not changed over time and that "her beliefs were not related to a recognized or organized

religion." (Doc. 29, ¶ 24). On December 9, 2021, Wellspan again informed employees that exemptions to the mandate were no longer available. (Doc. 29, ¶¶ 28-29). Rodriguez alleges that Wellspan began seeking referrals for candidates to work because many employees were refusing to be vaccinated and thus were either being terminated or resigning from their positions. (Doc. 29, ¶ 30).

On or around December 8, 2021, Rodriguez discovered she was pregnant. (Doc. 29, ¶ 28). On December 10, 2021, Rodriguez informed Jones that she did not want to receive the COVID vaccine because of her pregnancy and other medical concerns. (Doc. 29, ¶ 31). Rodriguez alleges that she received "inconsistent messages" from Wellspan and Jones about the availability of exemptions and accommodations. (Doc. 29, ¶¶ 30, 33-34, 44). Rodriguez never sent her draft religious exemption request because she thought exemptions were no longer being accepted, information she asserts she shared with Jones. (Doc. 29, ¶¶ 22, 27, 36). On December 22, 2021, Jones communicated with Rodriguez that she may be able to receive an exemption, stating: "Please contact HR about the exemptions. I am not sure what may have changed with the pause. Also, now with the pregnancy I am not sure if the deferral process changed." (Doc. 29, ¶ 34). Jones emailed Rodriguez on January 4, 2022 stating "try to get a hold of someone as soon as possible to see what your options are regarding exemptions. At some point the system will most likely be requiring the vaccine again." (Doc. 29, ¶ 36). On January 22, 2022, Rodriguez responded, stating "the lady told me that CDC authorized the vaccine for pregnant, she said the only thing I could do is fill out a medical exception however that is not a good reason for them to authorize the exception." (Doc. 29, ¶ 37). Rodriguez avers that other pregnant workers were given exemptions to the mandate. (Doc. 29, ¶ 37). On January 27, 2022, Jones responded to Rodriguez to inform her that the

vaccine requirement had been reinstituted and that vaccine mandates like Wellspan's comply with CDC guidelines and have been upheld by the Supreme Court. (Doc. 29, ¶ 38). Jones also told Rodriguez that exemptions are no longer available unless "an individual becomes aware of a new condition." (Doc. 29, ¶ 38).

On January 28, 2022, Rodriguez was treated in the emergency room for heavy bleeding, panic, and anxiety due to pregnancy complications, and informed Jones of the circumstances. (Doc. 29, ¶ 39). As a result of the complications, Rodriguez required physical accommodations, such as limitations of lifting and certain movements, which Wellspan granted beginning on February 17, 2022. (Doc. 29, ¶ 40). Wellspan did not accommodate Rodriguez for her anxiety about the vaccine. (Doc. 29, ¶ 41).

On February 24, 2022, Rodriguez responded to an email from Jones touching base about the mandate and asking if Rodriguez planned to resign for noncompliance. (Doc. 29, ¶ 47). Rodriguez responded that she did not plan to resign and that she was disappointed by Wellspan's decision to terminate her employment due to the mandate. (Doc. 29, ¶ 48). Plaintiff wrote, "[a]s a pregnant woman, who is considered to have a high risk pregnancy due to bleeding, I was placed in an uncomfortable position to decide whether I wanted to take a vaccine with no longitudinal studies for me and my baby's health outcome. As a mother, I am not ready to take the risk of causing any harm to my baby, to get vaccinated with a vaccine that is not even preventing infection nor reducing the risk of hospitalization in my age group." (Doc. 29, ¶ 48). On March 1, 2022, Rodriguez received a Corrective Action Form from Wellspan formally notifying her that she was out of compliance with the mandate. (Doc. 29, ¶ 49). Rodriguez responded that she had raised health, pregnancy and religious concerns with Wellspan, which Wellspan did not accommodate. (Doc. 29, ¶ 49). On March 2, 2022, Jones

5

wrote an email to members of Wellspan HR staff stating that she tried to work with Rodriguez to explain different exemptions to the vaccine mandate. (Doc. 29, ¶ 50). Rodriguez's employment was terminated on March 7, 2022. (Doc. 29, ¶ 52).

On April 27, 2023, Rodriguez filed her complaint, asserting claims of disability, religious, and pregnancy discrimination. (Doc. 1). On July 1, 2023, Rodriguez filed an amended complaint, (Doc. 17), which this Court dismissed without prejudice in an Order dated August 22, 2024. (Doc. 28). On August 29, 2024, Rodriguez filed the operative second amended complaint. (Doc. 29). On September 12, 2024, Wellspan filed its motion to dismiss. (Doc. 31). On October 1, 2024, Wellspan filed its brief in support. (Doc. 36). On October 4, 2024, Rodriguez filed her brief in opposition to Wellspan's motion to dismiss. (Doc. 37). On October 18, 2024, Wellspan filed its reply brief. (Doc. 38). Accordingly, the motion to dismiss has been fully briefed and is ripe for disposition.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

III.  **DISCUSSION**

  A.    **DISABILITY DISCRIMINATION CLAIMS**

In her First, Second, Fourth, and Fifth Claims for Relief, Rodriguez alleges disability discrimination claims under the ADA and under the PHRA for failing to provide a reasonable accommodation and hostile work environment. (Doc. 29, at 19-24). Wellspan argues that Rodriguez's disability discrimination claims fail as a matter of law because Rodriguez was not qualified for her position at Wellspan when she refused to get vaccinated. (Doc. 36, at 20-26). Rodriguez responds that she could not have been qualified for an exemption because Wellspan was discouraging physicians from providing doctor's notes saying she had a contraindication.[1] (Doc. 37, at 2).

As a general matter, the undersigned need not differentiate between Rodriguez's disability discrimination claims because they are "closely related;" resolution of the ADA claims effectively resolves the PHRA claims. *See Niven-Himes v. Pa. Hosp. of Univ. of Pa. Health*

---

[1] Notably, Rodriguez construes Wellspan's contention that she was unqualified for her position as an argument that her qualification hinged on a vaccine exemption prompted by a physician note. (Doc. 37, at 2). However, this is not what Wellspan articulates. Wellspan argues that Rodriguez's conditions or disabilities – her pregnancy, anxiety, and long COVID-19 symptoms– did not warrant exemption to the vaccine mandate pursuant to CDC guidelines. (Doc. 36, at 23-25). In other words, Wellspan asserts that whether Rodriguez was qualified for her job does not hinge on whether she had a valid physician note indicating she should be exempt from the vaccine mandate, but whether she had a condition that would qualify her for an exemption in the first place. (Doc. 36, at 23-25). This Court agrees with Wellspan. Rodriguez's qualification for her job had to do not with whether she had a physician note detailing her medical conditions, but with whether she complied with a vaccine mandate (with or without a physician note) based upon CDC guidelines regarding valid contraindications. (Doc. 36, at 23-25).

*Sys.*, 2021 WL 5298982, at *2 n.1 (E.D. Pa. Nov. 15, 2021) (comparing disability discrimination claims under the ADA and PHRA, collecting cases); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (comparing anti-retaliation claims under the ADA and PHRA). Therefore, the First, Second, Fourth, and Fifth Claims for Relief will be addressed together as one claim herein.

In order for a plaintiff to establish a *prima facie* case of discrimination under the ADA, the plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."[2] *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)). To make this showing, a plaintiff must do more than make "bald assertions" that they meet the three requirements. *Amiot v. Kemper Ins. Co.*, 122 F. App'x 577, 580 (3d Cir. 2004) (affirming dismissal of an ADA claim where a plaintiff only made "bald assertions" that they were a disabled person within the meaning of the ADA and finding "bald assertions are insufficient"); *see also Cabera v. FedEx Supply Chain*, No. 1:21-CV-00048, 2021 WL 2439636, at *4 (M.D. Pa. June 15, 2021) (finding that it was insufficient for a plaintiff to assert he was qualified to perform the essential functions of the job without even clarifying the what those essential functions were). Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306-07 (3d Cir. 1999). The

---

[2] For the purposes of this motion to dismiss, the parties dispute only whether Rodriguez was otherwise qualified to perform her job. (Doc. 36, at 20 n.30).

ADA specifies that an employer discriminates against a qualified individual with a disability when the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." 42 U.S.C. § 12112(b)(5)(A).

As discussed *supra* n.1, the parties dispute the effect that Wellspan's alleged practice of discouraging physicians from providing doctor's notes has on the present analysis. (Doc. 36, at 23-25; Doc. 37, at 2). For the purposes of the motion to dismiss, the Court will assume it is true that Wellspan discouraged its physicians from providing documentation to Rodriguez and others like her. (Doc. 29, ¶ 20). However, this does not impact this Court's analysis in any material respect. Rodriguez makes the blanket allegation that she "was qualified for her position as noted in her performance appraisal." (Doc. 29, ¶ 104). It is insufficient for a plaintiff to make "bald assertions" that they meet the requirements of an ADA *prima facie* showing. *See Amiot*, 122 F. App'x at 580 (affirming dismissal of an ADA claim where the plaintiff only made bald assertions that they were a disabled person within the meaning of the ADA); *see also Cabera*, 2021 WL 2439636, at *4 (dismissing a case where a plaintiff failed to provide support for their assertion that they were qualified to perform the essential functions of their job). To be qualified to perform the essential duties of her job, Rodriguez would have had to have been vaccinated for COVID-19 or qualify under a recognized exemption under the vaccine mandate. (Doc. 29, ¶¶ 21, 36-38; Doc. 29-3, at 2; Doc. 29-5). Rodriguez alleges that she had a high-risk pregnancy, anxiety, and Long COVID-19 symptoms. (Doc. 29, ¶¶ 20, 22, 40-44). None of these conditions are ones "that the CDC had recognized as medical contraindications to the COVID-19 vaccinations available at that time." (Doc. 36, at 23); *see*

86 Fed. Reg. 61555, 61572 (Nov. 5, 2021) (emphasizing that facilities implement a process by which staff can be exempted from vaccine mandates in accordance with federal law, and stating that to determine what constitutes a recognized contraindication "facilities should refer to the CDC informational document, Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Authorized in the United States"); CDC, *Interim Clinical Considerations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States*, https://www.cdc.gov/vaccines/covid-19/clinical-considerations/interim-considerations-us.html#contraindications (listing contraindications recognized by the CDC at the time of Rodriguez's employment and not recognizing Long COVID-19, anxiety, or pregnancy as contraindications). Thus, Rodriguez fails to allege that she "suffered from a condition that would qualify her for a medical exemption from the COVID-19 vaccination requirement." (Doc. 36, at 23). It follows, then, that she cannot allege that she was qualified to perform the essential functions of her job, as she concedes in her second amended complaint that Wellspan's vaccine mandate required staff to be vaccinated unless they had a CDC-recognized contraindication. (Doc. 29, ¶¶ 21, 36-38; Doc. 29-3, at 2; Doc. 29-5). The Court takes into consideration Wellspan's argument that accommodating Rodriguez by exempting her from the vaccinate policy without a CDC-recognized condition would have also been an undue hardship, as accepting exemptions for conditions not recognized by the CDC would have jeopardized its funding. *See* 86 Fed. Reg. 61555-01 (noting that facilities that do not comply with CDC vaccination regulations may be subject to enforcement remedies including "for example, civil money penalties, denial of payment for new admissions, or termination of the Medicare/Medicaid provider agreement"); *see also* 29 C.F.R. § 1630.2(p)(2) (noting that an undue hardship includes limiting a facility's ability to

do business). As such, Rodriguez was not qualified to perform the essential duties of her job because she was out of compliance with the mandate. Accordingly, Wellspan's motion to dismiss Rodriguez's First, Second, Fourth, and Fifth Claims for Relief shall be **GRANTED**. (Doc. 31).

### B.    RETALIATION CLAIMS

Wellspan submits that Rodriguez's retaliation claims under the ADA, PHRA, and Title VII fail. (Doc. 36, at 28-31). Wellspan contends that even assuming that Rodriguez's opposition to the vaccine requirement or request for an exemption constituted a protected activity, Rodriguez still fails to state a claim for retaliation because the allegations in the second amended complaint reveal that any protected activity "played no role in Wellspan's decision to terminate her employment." (Doc. 36, at 30). Rodriguez responds that she was terminated "after opposing unlawful treatment" on February 24, 2022. (Doc. 37, at 5).

At the onset, the Third Circuit refers to retaliation claims under both the ADA and PHRA in the singular because "analysis of an ADA claim applies equally to a PHRA claim." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *see Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 n.9 (3d Cir. 2016). "To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citations omitted). "[U]nlike a general ADA discrimination claim, an ADA retaliation claim does not require that the plaintiff demonstrate a disability within the meaning of the ADA, but only that the plaintiff has a reasonable, good

faith belief that [he] was entitled to request the reasonable accommodation [he] requested." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (internal citation omitted). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima*, 602 F.3d at 188. ADA retaliation claims are analyzed under the Title VII retaliation claim framework. *Krouse*, 126 F.3d at 500. A plaintiff claiming retaliation must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Rail. Co. v. White*, 548 U.S. 53, 54 (2006)). Given that the Third Circuit applies identical analyses to Title VII, ADA, and PHRA retaliation claims, the Court addresses Rodriguez's Third, Sixth, and Seventh Claims for Relief together.

Here, Rodriguez has sufficiently pled an adverse employment action by alleging that Wellspan terminated her employment on March 7, 2022, an allegation that Wellspan does not dispute. (Doc. 29, ¶¶ 50-52); *see Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994 (E.D. Pa. July 26, 2023) (termination is an adverse employment action); *see also Ruggiero*, 736 F. App'x at 41. Rodriguez properly alleged she protested the vaccine requirement by alleging that she "oppose[d] Defendant's vaccine mandate through her termination as it infringed upon her religious beliefs and her right to postponement or exemption due to pregnancy." (Doc. 29, ¶ 96). After she received her Corrective Action Form on March 1, 2022, but prior to her termination, Rodriguez authored a letter which stated, "I was not given a realistic option" because "I was placed in an uncomfortable position to decide whether I wanted to take a vaccine with no longitudinal

studies for me and my baby's health outcome." (Doc. 29, ¶ 48). Her letter refers to her pregnancy as reasons for protesting the policy, and thus she has sufficiently shown a "good faith belief that [she] was entitled to request the reasonable accommodation [she] requested." (Doc. 29, ¶ 48); *Sulima*, 602 F.3d at 188; *see also Divine Equal. Righteous*, 2023 WL 4763994, at *10 (allowing a plaintiff to advance that they engaged in a protected activity by "submitting the letter to HR [] following [d]efendant's decision to require the [p]laintiffs to obtain the vaccine or otherwise be deemed to have voluntarily resigned" and "filing a charge of discrimination with the EEOC."); *see, e.g., Al Refat v. Franklin Fin. Servs. Corp.*, No. 1:19-CV-1507, 2021 WL 2588789, at *6 n.6 (M.D. Pa. June 24, 2021) ("merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (quoting *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018)).

However, Rodriguez's retaliation claims fails because she has not adequately pleaded that her protest of the vaccine mandate was the likely cause of her termination. *See Krouse*, 126 F.3d at 500. Rodriguez alleges that Wellspan terminated her employment "in close temporal proximity to her requesting pregnancy accommodation, receiving accommodation for her restrictions and medical leave and/or seeking continued accommodations." (Doc. 29, ¶ 100). However, again, even when construing these facts in the light most favorable to Rodriguez, this Court finds the same deficiencies in her second amended complaint that it found in her amended complaint. (Doc. 27, at 18-19). No allegations in the second amended complaint allow this Court to properly infer a causal connection between Rodriguez's protest of the vaccine mandate and her termination. (Doc. 29). For example, Rodriguez argues that her February 24, 2022 letter constituted her protest of the policy which led to her firing. (Doc.

37, at 5). However, Rodriguez's February 24, 2022 letter was not the first instance that she voiced her opposition to the vaccine policy. (Doc. 29, ¶ 48). In fact, Rodriguez alleges that she began protesting the policy in the fall of 2021, opposition she reiterated repeatedly. (Doc. 29, ¶¶ 8, 14-15, 20-24, 36-41, 47-52). Rodriguez has not alleged that her termination was the result of retaliation for her February 24, 2022, letter opposing Wellspan's policies, or any other opposition to Wellspan's policies for that matter, rather than due to the enforcement of the vaccine policy when Rodriguez continued to refuse to comply. *See Divine Equal. Righteous,* 2023 WL 4763994, at *10 ("the sum of [p]laintiffs' allegations tends to support that the claimed adverse actions were not done in retaliation for any protected activity but were instead merely actions taken consistent with [d]efendant's stated vaccination policy[. . . . and p]laintiffs' termination [. . . .] were the consequences of [p]laintiffs' initial and continued failure to follow the vaccination policy, and there are no non-conclusory allegations supporting that either was done in retaliation for any protected activity."); *see also Worthy v. Unilever United States, Inc.,* No. 2:23-CV-17570 (BRM) (JSA), 2024 WL 3326039, at *11 (D. N.J. July 8, 2024) ("[p]laintiff alleges [. . .] that '[d]efendant's decision to terminate [p]laintiff's employment was motivated, in whole or in part, by [p]laintiff's protected activity; specifically, his complaint to HR.' Absent more, these allegations are insufficient to assert a claim for unlawful retaliation.") (internal citations omitted); *see also Bushra v. Main Line Health, Inc.,* No. CV 23-1031, 2024 WL 1219962 (E.D. Pa. Mar. 21, 2024) (finding that plaintiff did not state a retaliation claim when she sent an email protesting vaccine policy after adverse employment action).

To reiterate, Rodriguez has not included any allegations in her second amended complaint that cure the deficiencies outlined by this Court in its August 22, 2024 Order and

Memorandum. (Doc. 27; Doc. 28; Doc. 29). Accordingly, Rodriguez has continued to fail to

state a claim for retaliation under the ADA, PHRA, or Title VII. (Doc. 29). Wellspan's

motion to dismiss the Third, Sixth, and Seventh Claims for Relief shall be **GRANTED**. (Doc.

31).

      C.    Pᴇɢɴᴀɴᴄʏ Dɪsᴄʀɪᴍɪɴᴀᴛɪᴏɴ Cʟᴀɪᴍ

Wellspan asserts that Rodriguez has not stated a claim under the PDA for disparate

treatment because she has not alleged that similarly situated pregnant employees were treated

differently or more favorably than she was. (Doc. 36, at 26-38). Rodriguez responds that

Wellspan "surmises in its argument that employees that received exemptions could have been

qualified for the exemption, yet does so again without any evidence, or proof." (Doc. 37, at

4). Rodriguez also contends that she has stated a PDA claim because she "pled that

comparators exist that were granted exemptions, and that she her attempts to obtain

exemptions were undermined." (Doc. 37, at 5).

Title VII, as amended by the PDA, prohibits "discriminat[ion] against any individual

with respect to ... [his or her] compensation, terms, conditions, or privileges of employment,

because of the individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress enacted the

PDA to amend Title VII's definition section, clarifying:

> The terms "because of sex" or "on the basis of sex" include ... because of or on
> the basis of pregnancy, childbirth, or related medical conditions; and women
> affected by pregnancy, childbirth, or related medical conditions shall be treated
> the same for all employment-related purposes ... as other persons not so affected
> but similar in their ability or inability to work.

42 U.S.C. § 2000e(k).

The prohibition is breached "whenever an employee's pregnancy [or related medical

condition] is a motivating factor for the employer's adverse employment decision." *In re:*

*Carnegie Ctr. Assoc.*, 129 F.3d 290, 294 (3d Cir. 1997). The PDA does not, however, require preferential treatment for pregnant employees. Instead, it mandates that employers treat pregnant employees the same as non-pregnant employees who are similarly situated with respect to their ability to work. *In re: Carnegie Ctr. Assoc.*, 129 F.3d at 297; *see also Tysinger v. Police Dept. City of Zanesville*, 463 F.3d 569, 575 (6th Cir. 2006).

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)). A plaintiff alleging employment discrimination, however, is "not required to plead facts to establish a *prima facie* case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Lucchesi v. Day & Zimmerman Grp.*, No. 10-4164, 2011 WL 1540385, at *4 (E.D. Pa. Apr. 21, 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)).

For pregnancy discrimination, the Third Circuit has modified the first element of a *prima facie* case to "adduce evidence that she was pregnant, and, that the employer knew it." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citation omitted). The second and third elements are self-explanatory, and "[t]he fourth element requires that a plaintiff show some nexus between her pregnancy and the adverse employment action." *Doe*, 527 F.3d at 365. There are "several ways" to establish nexus – and while any one alone may be sufficiently suggestive of a causal link, causation can also be established holistically "based upon review of all proffered evidence." *Ahern v. EResearch Tech., Inc.*, 183 F.Supp.3d 663, 669

(E.D. Pa. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 303 (3d Cir. 2007) ("[I]t matters not ... whether each piece of evidence ... is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively."). The "broad array of evidence [upon which] a plaintiff may rely" to establish a causal nexus includes, *inter alia*, "disparate treatment, whereby a plaintiff shows that she was treated less favorably than similarly situated employees who are not in plaintiff's protected class," *Doe*, 527 F.3d at 366, "temporal proximity between the pregnancy and the adverse act[,]" *Ahern*, 183 F. Supp. 3d at 669 (citation omitted), a "pattern of antagonism," or facts that show an employer gave "inconsistent explanations" for the adverse action. *Farrell*, 206 F.3d at 280, 287 (internal quotation marks and citation omitted).

"[T]here is no bright line rule as to what constitutes un[usually] suggestive temporal proximity...." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). However, the Third Circuit "ha[s] held that a temporal proximity greater than ten days" is not, by itself, unusually suggestive. *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014) (citing *Farrell*, 206 F.3d at 280). Where "there is no unusually suggestive temporal proximity, courts look to 'the intervening period for ... circumstantial evidence ... that give[s] rise to an inference of causation when considered as a whole.' " *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F.Supp.3d 546, 557 (E.D. Pa. 2017) (alterations in original) (quoting *Marra*, 497 F.3d at 302); *see also Smith v. RB Distribution, Inc.*, Civ. A. No. 20-900, 2020 WL 6321579, at *10 (E.D. Pa. Oct. 28, 2020) (noting that, where the plaintiff cannot produce evidence of "an employer's inconsistent explanation, a pattern of antagonism, or temporal proximity, ... the evidence may, when taken as a whole, suffice to raise the inference.").

Rodriguez's PDA claim fails now for the same reason it failed in this Court's analysis of her amended complaint. (Doc. 17; Doc. 27, at 22-23; Doc. 29). Rodriguez was terminated based upon the timeline set out in Defendant's vaccine mandate. (Doc. 29, ¶¶ 49-52). First, she received her corrective action form on March 1, 2022, then she was terminated one week later, on March 7, 2022, when she still failed to come into compliance with the mandate. (Doc. 29, ¶¶ 49-52). In her second amended complaint, Rodriguez includes the new allegation that "nurses, medical assistants and phlebotomists (non-disabled and non-pregnant) were accommodated or exempted from taking the vaccine" when she was not exempted. (Doc. 29, ¶ 42). However, Wellspan is correct that this averment does not give this Court reason to believe that those non-pregnant or non-disabled employees who received exemptions were similarly situated to Rodriguez because Rodriguez was not qualified for an exemption under Wellspan's policies, and the second amended complaint fails to allege that these employees were similarly not qualified for exemptions. (Doc. 36, at 27). Rodriguez seems to claim that she cannot aver as much because Wellspan was discouraging its physicians from providing exemptions. (Doc. 37, at 4). However, this argument confuses the point. Rodriguez's contention that other employees received exemptions undermines her argument that physicians were not granting exceptions. (Doc. 29, ¶¶ 20, 42). Instead, the allegations in her second amended complaint suggest that some employees were receiving exemptions. (Doc. 29, ¶ 42). Rodriguez does not adequately allege that her pregnancy or disability was the cause of her termination, rather than Rodriguez's refusal to get vaccinated without a proper exemption. The Court emphasizes its previous finding that Rodriguez was not terminated after becoming pregnant or after she told supervisors she was pregnant, nor was Wellspan inconsistent in its explanation of Rodriguez's termination. (Doc. 29, ¶¶ 31-49). To the

contrary, the second amended complaint shows that Wellspan and Jones consistently checked in with Rodriguez regarding her vaccination status and the consequences of noncompliance with the vaccine mandate. (Doc. 29, ¶¶ 16-17, 31-49). Accordingly, the circumstances do not "suffice to raise the inference" that Plaintiff was treated differently due to her pregnancy. *See Smith*, 2020 WL 6321579, at *10. Wellspan's motion to dismiss Rodriguez's Eighth Claim for Relief is **GRANTED**. (Doc. 31).

      D.    LEAVE TO AMEND

      The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, Rodriguez has previously amended her complaint on two separate occasions. In the Court's August 22, 2024 Memorandum and Order, the Court outlined specific shortcomings of her claims and granted leave to cure those deficiencies. (Doc. 27). Rodriguez has failed to do so, and the Court thus will DENY further leave to amend. *See Mahoney v. Waldameer Park, Inc.*, No. CV 20-3960, 2021 WL 1193240, at *7 (E.D. Pa. Mar. 30, 2021) ("A district court may properly deny leave to amend where a party has repeatedly failed to cure deficiencies in his complaint.") (citations omitted); *Bolus v. Gaughan*, No. 3:21-CV-01315, 2023 WL 9103093, at *5 (M.D. Pa. Dec. 13, 2023), *report and recommendation adopted*, No. 3:21-CV-001315, 2024 WL 54113 (M.D. Pa. Jan. 4, 2024) (denying leave to amend when this Court "ha[d] previously been granted leave to amend and [the plaintiff] ha[d] failed to cure the deficiencies

outlined [t]herein."); *United States v. Eastwick Coll.*, 657 F. App'x 89, 97 (3d Cir. 2016) ("'[A] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them.'") (quoting *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.,* 769 F.3d 837, 849 (3d Cir. 2014) (internal quotation marks omitted)).

## IV.    CONCLUSION

For the foregoing reasons, Wellspan's motion to dismiss is **GRANTED**. (Doc. 31). Rodriguez's second amended complaint is **DISMISSED**. (Doc. 29). The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

BY THE COURT:

Dated: June 18, 2025                      s/ *Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**